**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SEAN SULLIVAN | : | |
| | : | |
| Appellant | : | No. 2973 EDA 2017 |

Appeal from the PCRA Order August 15, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0014636-2011

BEFORE: DUBOW, J., NICHOLS, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY NICHOLS, J.: **FILED SEPTEMBER 25, 2018**

*Pro se* Appellant Sean Sullivan appeals from the order denying his first

Post Conviction Relief Act (PCRA)[1] petition. He raises several claims of PCRA

court error and ineffective assistance of PCRA counsel. We affirm.

We state the facts as set forth by this Court on direct appeal:

On June 21, 2011, while incarcerated for murder at the Curran-Fromhold Correctional Facility, [Appellant] got into a dispute with the inmates in Cell 15, Aaron Young and Richard Gyton. [Appellant] threatened to settle the dispute later that night. [Appellant] began to recruit co-conspirators, including co-defendant Donte Jones, to assist him. Later that day, [Appellant], Jones and two other inmates went to Cell 15. [Appellant] had an improvised knife sticking out of his pants. Prison guards ultimately dispersed the group.

Over the next hour, [Appellant] and his friends huddled together in the prison yard, while the Cell 15 inmates played basketball and then returned to their cell. A few minutes later, a fight broke out

---

[1] 42 Pa.C.S. §§ 9541-9456.

among inmates waiting to use the phone. Taking advantage of the confusion, [Appellant] and two of his cohorts ran to Cell 15 and stabbed Gyton and Young multiple times with the improvised knives. A friend of Gyton and Young heard the screams and ran towards their cell, where one of [Appellant's] friends attacked him. [Appellant] and company ran towards the day room, where they ambushed another prisoner, Earl Bostic, stabbing him nine times and killing him. Authorities later recovered [Appellant's] DNA on one of the weapons used to kill Bostic.

Following a bench trial, the trial court convicted [Appellant] of murder in the third degree, conspiracy to commit homicide, possession of an instrument of crime, possession of a prohibited offensive weapon, and aggravated assault. The trial court acquitted [Appellant] of various charges stemming from the assaults on the other inmates. On May 10, 2013, based upon [Appellant's] prior murder conviction, the trial court sentenced him to a second mandatory life sentence for murder in the third degree, with concurrent sentences on the remaining charges.

***Commonwealth v. Sullivan***, 1905 EDA 2013, 1-2 (Pa. Super. Apr. 17, 2015) (unpublished mem.). The Court affirmed the judgment of sentence, and the Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal on December 8, 2015. ***Commonwealth v. Sullivan***, 129 A.3d 1243 (Pa. 2015).

On October 3, 2016, Appellant filed his first *pro se* PCRA petition.[2] The PCRA court appointed counsel, who filed a **Turner**/**Finley**[3] letter.

The court issued a Pa.R.Crim.P. 907 notice, and Appellant filed a *pro se* response in opposition, challenging PCRA counsel's failure to advocate the claims in Appellant's petition. Appellant's Resp. to Rule 907 Notice, 6/27/17. On August 15, 2017, the PCRA court granted counsel's petition to withdraw and dismissed Appellant's PCRA petition. Appellant timely appealed.

Appellant raises the following issues:

1. Did the post-conviction court err in [its] factual findings and conclusion[s] of law when such court denied Appellant an evidentiary hearing based on ineffective assistance of counsel when counsel failed to properly present the issue of "bolstering the testimony of a Commonwealth witness" which had a better chance of success on direct appeal as such a claim, when proven, is inadmissible in the courts of the Commonwealth of Pennsylvania and is cause for [reversible] error?

2. Did the post-conviction court (PCRA) err in [its] factual findings and conclusion[s] of law when it adopted the conclusion of appointed counsel['s] findings that read more like an amicus curie brief rather than an adversarial brief which rendered such appointed constructive denial of assistance of counsel thereby violating Appellant's Sixth Amendment right to effective assistance of counsel during a collateral attack in violation of Appellant's due process?

---

[2] **See Commonwealth v. Wilson**, 911 A.2d 942, 944 (Pa. Super. 2006) (recognizing that under the "prisoner mailbox rule" a document is deemed filed when placed in the hands of prison authorities for mailing). As discussed below, Appellant's petition did not raise the claim that trial counsel was ineffective by not introducing character or prior bad acts evidence regarding the victim.

[3] **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

3. Did the post-conviction court (PCRA) abuse [its] discretion in violation of Appellant's due process of law rendering the trial unfair when it allowed hearsay testimony that was not given not for the truth of the matter but for the purpose of prejudicing Appellant when it allowed the testimony of other crimes to permeate the trial and for which Appellant was never charged?

4. Did the post-conviction court (PCRA) err [and] abuse [its] discretion in [its] factual findings and conclusions of law when said court failed to hold an evidentiary hearing based on ineffective assistance of counsel when counsel failed to present character evidence of the victim that would have shown the victim had a history of assaultive behavior and bullying which would have justified his being assaulted by others as they feared him and not by Appellant as [another person's] DNA was present on the weapon used against victim and not Appelant's DNA?

Appellant's Brief at iii.

In support of Appellant's first issue, he argues that trial counsel was ineffective by not objecting when a police officer purportedly bolstered the testimony of Gyton. By way of background, this Court addressed the underlying issue on direct appeal:

[Appellant] first contends that the trial court erred when it permitted the Commonwealth to improperly bolster the credibility of inmate Richard Gyton, who was stabbed by [Appellant] in the prison melee. Prior to trial, Gyton gave a statement to police from his hospital bed, in which he implicated [Appellant] in the stabbing of Bostic. At trial, Gyton testified, contrary to his prior statement, that he did not see who stabbed Bostic. Although Guyton claimed that he was under the influence of medication at the time the prior statement was made, Detective Burke testified on cross-examination that "[Gyton] spoke clearly. He understood what I was asking him. He was very forthcoming." N.T., Trial, 2/28/13 at 69.

Preliminarily, we note that our review of the trial transcript reveals defense counsel did not raise a contemporaneous objection to

Detective Burke's allegedly improper testimony. On this basis, we find [Appellant's] claim waived. . . .

Nonetheless, even if we were to examine this claim, we would not grant relief. . . .

We would find that it was properly within the trial court's sound discretion to admit testimony that Gyton was clear and forthcoming as falling within the realm of common knowledge, experience and understanding. Clearly, Detective Burke's testimony as to Gyton's demeanor during questioning was based upon his personal observation. More importantly, we do not find Detective Burke's characterization impermissibly intruded upon the duty of the jury to determine credibility of witnesses, but rather provided relevant context to Gyton's state of mind and demeanor at the time he gave his prior statement. Therefore, [Appellant's] allegation of error would merit no relief.

*Sullivan*, 1905 EDA 2013, at 3-5.

Here, Appellant argues PCRA counsel was ineffective by not raising trial counsel's alleged ineffectiveness for failing to object to Detective Burke's testimony. Appellant's Brief at 6. In Appellant's view, Detective Burke "usurped the truth-determining function of the factfinder," by testifying to the "truthfulness" of Gyton's inculpatory statement. *Id.* at 5-6.

Our standard of review is well-settled:

We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. This Court may affirm a PCRA court's decision on any grounds if the record supports it. We grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Further, where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary.

*Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa. Super. 2012) (citations omitted).

To warrant relief based on an ineffectiveness claim, a petitioner must show that such ineffectiveness "in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *Commonwealth v. Jones*, 912 A.2d 268, 278 (Pa. 2006); *accord* 42 Pa.C.S. § 9543(a)(2)(ii). Counsel is presumed to have rendered effective assistance. *Commonwealth v. Weiss*, 81 A.3d 767, 783 (Pa. 2013).

To overcome the presumption, the defendant has to satisfy the performance and prejudice test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The Pennsylvania Supreme Court has applied the *Strickland* test by examining three elements; specifically, whether (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) the petitioner has shown that he suffered prejudice as a result of counsel's lapse, *i.e.*, that there is a reasonable probability that the result of the proceeding would have been different. *Commonwealth v. Bennett*, 57 A.3d 1185, 1195-96 (Pa. 2012). If a claim fails under any necessary element of the *Strickland* test, the court may proceed to that element first. *Id.* Counsel will not be deemed ineffective for failing to raise a meritless claim. *Jones*, 912 A.2d at 278.

For example, in **Commonwealth v. Collins**, 888 A.2d 564 (Pa. 2005), the defendant raised a claim that trial counsel was ineffective for failing to raise a particular Pennsylvania due process claim, the details of which are unnecessary to restate here. **Id.** at 574. On PCRA appeal, the defendant reframed the due process claim as a violation of the federal constitution. **Id.** The Court, in resolving the issue, stated "the factors that we considered on direct appeal are the same as the factors [the defendant] now asks us to consider on collateral review." **Id.** at 575. After evaluating an additional federal factor that provided no relief to the defendant, the Court held that "for the reasons discussed on direct appeal, [the defendant] cannot establish that this claim has arguable merit, and this claim of ineffectiveness fails." **Id.**

Here, Appellant raised the underlying claim on direct appeal, which the prior Court addressed on the merits, assuming no waiver of the failure to object. **Sullivan**, 1905 EDA 2013, at 3-5. We are bound by that alternative holding. **See Commonwealth v. Reed**, 971 A.2d 1216, 1220 (Pa. 2009) (holding that Superior Court's prior holding of waiver and alternative holding on the merits was law of the case). Because Appellant cannot establish that his underlying claim has arguable merit, he cannot succeed on his ineffectiveness claim. **See Jones**, 912 A.2d at 278; **Collins**, 888 A.2d at 575; **see also Bennett**, 57 A.3d at 1195-96.

Second, Appellant challenges PCRA counsel's advocacy. Specifically, Appellant contends that PCRA counsel's **Turner/Finley** brief was insufficiently

adversarial, such that his Sixth Amendment right to counsel was violated. Appellant's Brief at 6-7.

Initially, Appellant's right to PCRA counsel is rule-based. **See** Pa.R.Crim.P. 904. "[T]here is no Sixth Amendment right or due process right to counsel during collateral review." **Commonwealth v. Figueroa**, 29 A.3d 1177, 1180 n.6 (Pa. Super. 2011) (citations omitted). Further, counsel, in a **Turner**/**Finley** brief, must argue against the client's interests and articulate "why the client's claims have no merit." **Commonwealth v. Wrecks**, 931 A.2d 717, 722 (Pa. Super. 2007). Thus, Appellant is not entitled to relief because PCRA counsel, when filing a **Turner**/**Finley** brief, was obligated to argue against Appellant. **See Wrecks**, 931 A.2d at 722.

For his third claim, Appellant contends that the trial court erred in two separate occasions by permitting testimony. First, Appellant argues the trial court erred by overruling his counsel's objection to the Commonwealth's question to a witness "about how drugs were brought in the jail." Appellant's Brief at 9. He faults the court for hearing the testimony and then purportedly instructing itself—it was a bench trial—to disregard the testimony. **Id.** Second, Appellant contends the court erred by overruling his counsel's objection to a question that elicited hearsay testimony from a police officer. **Id.** at 10. We note Appellant did not explain why he could not have raised these issues on direct appeal.

In *Commonwealth v. Wholaver*, 177 A.3d 136 (Pa. 2018), the defendant raised a claim "that the trial court erred by overruling trial counsel's objection" to certain evidence. *Id.* at 179. The Pennsylvania Supreme Court held that the defendant's claim was "waived for purposes of the PCRA because he could have raised the issue on direct appeal. 42 Pa.C.S. § 9544(b)." *Id.* Here, the *Wholaver* Court's reasoning applies equally here: Appellant's third claim is waived because he could have raised it on direct appeal. *See id.*

In support of his last issue, Appellant argues that trial counsel was ineffective by not presenting character evidence of the victim, including the victim's prior convictions for assault to corroborate the victim's purportedly violent character. Appellant's Brief at 12.

The PCRA court resolved the issue as follows:

> This court's review of the record belied [Appellant's] claim that trial counsel failed to elicit evidence relating to prison conditions and the victim's violent proclivities and physical size. [Appellant's counsel and counsel for his co-defendants] established that [the prison in question] is a violent place where stabbings frequently occur, that the victim as very big and tough and likely sold drugs, guards were ineffectual in stopping and preventing violence, inmates had to fend for themselves, and . . . that the victim used violence against [Appellant] before [Appellant and others] attacked the victim.

PCRA Ct. Op., 9/20/17, at 8 (citations to trial record omitted).

We agree with the PCRA court's ruling. Moreover, to the extent Appellant is specifically arguing about the victim's prior convictions for assault, he never raised that argument before the PCRA court and has therefore waived it. *See* Pa.R.A.P. 302 ("Issues not raised in the lower court are waived

and cannot be raised for the first time on appeal."). Accordingly, having discerned no error, we affirm. **See Ford**, 44 A.3d at 1194.[4]

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/25/18

---

[4] Appellant also filed a supplemental appellate brief, raising, for the first time, that trial counsel was ineffective for failing to call Alvin Lloyd as a witness. That claim is waived because Appellant did not raise it in his PCRA petition. **See** Pa.R.A.P. 302(a).

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA : NO. CP-51-CR-0014636-2011

:

VS. CP-51-CR-0014636-2011 Comm. v. Sullivan, Sean
Opinion

SEAN SULLIVAN



7143071581

OPINION

**FILED**

APR 2 5 2014

Criminal Appeals Unit
First Judicial District of PA

PROCEDURAL HISTORY

Defendant, Sean Sullivan, was charged as of the above Bill and Term No. with, *inter alia*, one count of Murder, generally, one count of Conspiracy to Commit Murder, four counts of Attempted Murder, four counts of Aggravated Assault, one count of Possession of an Instrument of Crime and one count of Possession of an Offensive Weapon. These charges arose from an incident that occurred at Curran Fromhold Correctional Facility (CFCF) during which defendant, an inmate, along with four co-conspirators Rashawn Edwards, Haleem Poole, Jalik Peay and Donte Jones, engaged in an attack on five other inmates. During the incident, George Moore, an inmate at CFCF, was fatally injured.

Defendant was tried in February and March of 2013, before this Court, sitting without a jury. At the conclusion of the trial, this Court found defendant guilty of Third-Degree Murder, Possession of an Instrument of Crime, Possession of an Offensive Weapon, Conspiracy to Commit Murder and one count of Aggravated Assault. This Court found defendant not guilty of four counts of Attempted Murder and three counts of Aggravated Assault.

On May 10 2013, defendant was sentenced to life without parole on the Third-Degree Murder charge, ten to twenty years on the Conspiracy to Commit Murder charge, ten to twenty years on the Aggravated Assault charge, and two to six years on the Possession of an Offensive Weapon charge.[1] All of the sentences involving terms of years were ordered to run concurrent with the sentence of life without parole. However, the sentence of life without parole was ordered to run consecutive to the sentence of life without parole that defendant was already serving as a result of a previous murder conviction.

FACTS

On July 7, 2011, at approximately 9 p.m., George Moore, an inmate at CFCF who was housed in section C-2 Pod 2, was using a telephone in the phone bank in the phone bank area of the Pod when he was attacked by one of defendant's co-conspirators. In the commotion that ensued, defendant and his co-conspirators proceeded to attack Jokir Slade, Aaron Young, Richard Gyton and Earl Bostic with sharp weapons. Mr. Moore suffered bruises from his attack. Mr. Slade, Mr. Young, Mr. Gyton and Mr. Bostic all suffered stab wounds. Mr. Bostic died from the stab wounds he suffered during the incident. Defendant's DNA was found on the sharp weapon which was used in the killing of Mr. Bostic.

DISCUSSION

In his 1925(b) statement defendant first asserts that this Court erred in permitting the Commonwealth to use police detectives as witnesses to bolster the credibility of prison inmate witnesses. It is suggested that this claim of error be considered waived due to defendant's failure to point to the location in the record where the improper bolstering appears. When ordered to do so by a trial court, an appellant must file a concise statement of matters complained of on appeal

---

[1] Because defendant had a prior murder conviction, the provisions of 42 Pa.C.S. § 9715 applied and required the imposition of a life sentence.

pursuant to Pennsylvania Rule of Appellate Procedure 1925(b) that sets forth with particularity the issues an appellant intends to raise on appeal. Commonwealth v. Castillo, 888 A.2d 775, 780 (Pa. 2005); Pa.R.A.P. 1925(b). The complete absence of a 1925(b) statement, the omission of a certain issue from that statement, and/or the failure to identify specific errors with respect to a listed issue all result in waiver of some or all issues on appeal. Castillo, 888 A.2d at 780; Commonwealth v. McCree, 857 A.2d 188, 192 (Pa.Super.2004).

Instantly, defendant simply mentions the term 'bolster' in his 1925(b) statement without identifying a specific witness or pointing to a page in the notes of testimony where the alleged error appears. This has made it impossible for this Court to ascertain the location in the record and, more importantly the nature and gist, of defendant's assertions. Accordingly, it is suggested that no relief is due on this claim because defendant failed to specify where in the record the errors he alludes to appear thereby making it impossible for this Court to address the merits of the claim. See Commonwealth v. Hansley, 24 A.3d 410 (Pa. Super. 2011) (holding that failure to articulate where the error appears in the record and to specify what the claim entails resulted in waiver of claim).

Even if defendant had referenced where in the record the errors he adverts to in his first claim appear, no relief would be due on the claim because this, Court, sitting as fact-finder, carefully listened to all of the evidence and when necessary, did not consider prejudicial or otherwise irrelevant testimony when deliberating upon the verdict. "It is presumed that a trial court, sitting as fact[-]finder, can and will disregard prejudicial evidence." Commonwealth v. Miller, 987 A.2d 638, 670 (Pa. 2009) (citations omitted). In addition, given that the evidence of defendant's guilt was overwhelming, any error committed by this Court was harmless beyond a reasonable doubt.

Defendant next claims the verdict was against the weight of the evidence for myriad reasons. He asserts that the evidence failed to prove that he acted with malice because of the lack of credible evidence, Commonwealth witnesses had motives to fabricate their testimony and were biased against defendant in favor of the Commonwealth, and the existence of defense evidence indicating that defendant did not participate in the fatal encounter. A claim that a verdict was against the weight of the evidence asserts that the verdict shocks one's sense of justice. Commonwealth v. Vandivner, 962 A. 2d 1170 (Pa. 2009). "A motion for a new trial on the grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict; thus the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner." Commonwealth v. Widmer, 744 A. 2d 745, 751 (Pa. 2000). "An allegation that the verdict is against the weight of the evidence is addressed to the sole discretion of the trial court." Id. at 751-752. Finally, it is exclusively for the finder of fact to determine the credibility of witnesses, and he may believe all, part, or none of the evidence presented. Commonwealth v. Dreibelbis, 426 A. 2d 1111, 1113 (Pa. 1981).

Instantly, the verdict does not shock the conscience. Defendant's prior hostility towards Mr. Bostic was well established through the testimony of other inmates. Defendant's role in the fatal stabbing of Mr. Bostic was also established through eye witness testimony. Furthermore, defendant's DNA was found on the murder weapon. Accordingly, it is suggested that no relief is due on this claim.

Defendant lastly asserts that the evidence was insufficient to sustain his conviction of Third-Degree Murder because the Commonwealth failed to prove that the killing was committed with malice. He contends that the evidence shows that defendant retreated to avoid violence and that the victim was larger than defendant and was himself engaging in violence.

In assessing the sufficiency of evidence, the court must view the evidence in the light most favorable to the verdict winner – in this case, the Commonwealth. Commonwealth v. Boczkowski, 846 A.2d 75, 80 (Pa. 2004). Both direct and circumstantial evidence, along with all reasonable inferences arising therefrom from which the finder of fact could properly have based its verdict, must be accepted as true and sufficient to support the challenged conviction. Commonwealth v. Perez, 931 A.2d 703, 706-7 (Pa. Super. 2007); Commonwealth v. Johnson, 719 A.2d 788 (Pa. Super. 1998), *appeal denied*. The finder of fact may believe all, part, or none of the evidence regarding the question of whether reasonable doubt existed, and the facts and circumstances need not be incompatible with the defendant's innocence. Commonwealth v. Derr, 841 A.2d. 558, 559 (Pa. Super. 2004). An appellate court may only award a new trial if the evidence was so unreliable and contradictory that it would be incapable of supporting a guilty verdict. Commonwealth v. Karkaria, 625 A.2d 1167, 1167 (Pa. 1993).

Third degree murder occurs when a person commits a killing which is neither intentional nor committed during the perpetration of a felony, but contains the requisite malice. Commonwealth v. Truong, 36 A.3d 592 (2012). To establish the offense of third degree murder, the Commonwealth need only prove beyond a reasonable doubt that the defendant killed an individual, with legal malice, *i.e.*, wickedness of disposition, hardness of heart, wantonness, cruelty, recklessness of consequences, or a mind lacking regard for social duty. Commonwealth v. Devine, 26 A.3d 1139 (2011).

Instantly, the evidence was more than sufficient to prove defendant acted with malice in the killing of Mr. Bostic The evidence showed that defendant repeatedly stabbed Mr. Bostic in the mid-section with a sharp object. Malice may be inferred from the use of a deadly weapon on

a vital part of a victim's body. Commonwealth v. Ventura, 975 A.2d 1128, 1144 (Pa. Super. 2009).

To the extent that defendant is claiming that the killing was justified or committed in self-defense, the use of deadly force comprises three specific elements:

> (1) The defendant was free from fault in provoking or continuing the difficulty which resulted in the killing; (2) the defendant must have reasonably believed that he was in imminent danger of death or great bodily harm, and that there was a necessity to use such force to save himself therefrom; and (3) the defendant did not violate any duty to retreat or avoid the danger.

See generally, Commonwealth v. Mayfield, 585 A.2d 1069 (1991) (en banc). If a defendant introduces evidence of self-defense, the Commonwealth bears the burden of disproving the self-defense claim beyond a reasonable doubt. Commonwealth v. Houser, 18 A.3d 1128, 1135 (2011). In order to disprove self-defense, the Commonwealth must prove beyond a reasonable doubt one of the following elements:

> (1) That the defendant did not reasonably believe it was necessary to kill in order to protect himself against death or serious bodily harm, or that the defendant used more force than was necessary to save himself from death, great bodily harm, or the commission of a felony; (2) that the defendant provoked the use of force; or (3) that the defendant had a duty to retreat and that retreat was possible with complete safety.

Commonwealth v. Burns, 765 A.2d 1144, 1148-49 (Pa. Super. 2000).

Here, the facts are such that it is clear that the defendant was not acting in self-defense when he stabbed the victim. Defendant, the evidence showed, had been having trouble with the victim on the day of the incident. In addition, despite defendant's assertions to the contrary, the evidence showed that he did not retreat and was the person who repeatedly stabbed the victim while the victim was incapable of protecting himself. Mr. Moore testified that he saw defendant and his co-conspirators repeatedly stab Mr. Bostic while he was on the ground. (N/T 2/26/14 p.

138). As such, the evidence was more than sufficient to establish that the killing was not committed in self-defense.

Accordingly, it is suggested that no relief is due on this claim.

## CONCLUSION

For the foregoing reasons, defendant's assertions of error should be dismissed for lack of merit and the judgment of sentence should be affirmed.

By the Court,

Date: 4/25/14

_____
Honorable Jeffrey P. Minehart

0070_Opinion

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA : NO. CP-51-CR-0014636-2011

                          :

                 VS.

SEAN SULLIVAN



CP-51-CR-0014636-2011 Comm. v. Sullivan, Sean
Opinion

8005144421

OPINION

FILED

SEP 2 0 2017

Office of Judicial Records
Appeals/Post Trial

PROCEDURAL HISTORY

Defendant, Sean Sullivan, was charged as of the above Bill and Term No. with, *inter alia*, one count of Murder, generally, one count of Conspiracy to Commit Murder, four counts of Attempted Murder, four counts of Aggravated Assault, one count of Possession of an Instrument of Crime and one count of Possession of an Offensive Weapon. These charges arose from an incident that occurred at Curran Fromhold Correctional Facility (CFCF) during which defendant, an inmate at the facility, along with four co-conspirators Rashawn Edwards, Haleem Poole, Jalik Peay and Donte Jones, engaged in an attack on five other inmates. During the incident, Earl Bostic, an inmate at CFCF, was fatally injured.

Defendant was tried in February and March of 2013, before this Court, sitting without a jury. At the conclusion of the trial, this Court found defendant guilty of Third-Degree Murder, Possession of an Instrument of Crime, Possession of an Offensive Weapon, Conspiracy to Commit Murder and one count of Aggravated Assault. This Court found defendant not guilty of four counts of Attempted Murder and three counts of Aggravated Assault.

On May 10 2013, defendant was sentenced to life without parole on the Third-Degree Murder charge, ten to twenty years on the Conspiracy to Commit Murder charge, ten to twenty years on the Aggravated Assault charge, and two to six years on the Possession of an Offensive Weapon charge.[1] All of the sentences involving terms of years were ordered to run concurrently with the sentence of life without parole. However, the sentence of life without parole was ordered to run consecutive to the sentence of life without parole that defendant was already serving as a result of a previous murder conviction.

On June 28, 2013, defendant filed a Notice of Appeal and on April 17, 2015, the Superior Court affirmed the judgment of sentence. (1905 EDA 2013). Defendant then filed a petition for allowance of appeal in the Pennsylvania Supreme Court, which denied the petition on December 8, 2015. (277 EAL 2015).

On October 3, 2016, defendant filed a timely *pro se* timely petition pursuant to the Post-Conviction Relief Act. 42 Pa.C.S. §§ 9541 *et seq.* (hereinafter PCRA). Counsel was appointed to represent him and on June 1, 2017, counsel filed a no-merit letter pursuant to Commonwealth v. Finley, 550 A.2d 213 (Pa. Super. 1988), and Commonwealth v. Turner, 544 A.2d 927 (Pa. 1988), and a Motion to Withdraw as Counsel. After carefully reviewing all of the filings and the entire record, this Court determined that defendant's claims lacked merit and on June 14, 2017, this Court sent defendant a Pa.R.Crim.P. 907 Notice of Intent to Dismiss. Defendant filed a response to the 907 Notice. Upon reviewing defendant's response and the entire record again, this Court, issued an order on August 15, 2107, denying defendant PCRA relief. Defendant timely filed a notice of appeal from the order denying him PCRA relief.

---

[1] Because defendant had a prior murder conviction, the provisions of 42 Pa.C.S. § 9715 applied and required the imposition of a life sentence.

FACTS

On July 7, 2011, at approximately 9 p.m., George Moore, an inmate at CFCF who was housed in section C-2 Pod 2, was using a telephone in the phone bank in the phone bank area of the Pod when he was attacked by one of defendant's co-conspirators. In the commotion that ensued, defendant and his co-conspirators proceeded to attack Jokir Slade, Aaron Young, Richard Gyton and Earl Bostic with sharp weapons. Mr. Moore suffered bruises from his attack. Mr. Slade, Mr. Young, Mr. Gyton and Mr. Bostic all suffered stab wounds. Mr. Bostic died from the stab wounds he suffered during the incident. Defendant's DNA was found on the sharp weapon which was used in the killing of Mr. Bostic.

DISCUSSION

In his PCRA petition, defendant raised the following claims:

1.) THE LIFE SENTENCE IMPOSED FOR THIRD-DEGREE MURDER IS ILLEGAL BECAUSE PETITIONER WAS NOT CONVICTED OF THIRD DEGREE MURDER BUT RATHER CONSPIRACY TO COMMIT THIRD DEGREE MURDER AND PRIOR COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE THIS CLAIM;

2.) TRIAL COUNSEL WAS INEFFECTIVE FOR NOT SENTING EVIDENCE CONCERNING PRISON CONDITIONS AND THE SIZE OF THE VICTIM;

3.) TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL BY NOT OBJECTING TO TESTIMONY THAT BOLSTERED THE TESTIMONY OF RICHARD GYTON;

4.) TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL BY NOT NOT CHALLENGING THE CREDIBILITY OF THE COMMONWEALTH'S COOPERATING WITNESSES AND FOR FAILING TO MOVE TO EXCLUDE THEIR TESTIMONY;

5.) TRIAL COUNSEL PROVIDED INEFFECTIVE
ASSISTANCE OF COUNSEL BY NOT ARGUING THAT
THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN THE
CONSPIRACY CHARGE;

6.) A NEW TRIAL SHOULD BE GRANTED BECAUSE
RICHARD GYTON AUTHORED A LETTER WHEREIN
HE STATES THAT THE POLICE AND THE
PROSECUTION FORCED HIM TO IMPLICATE
DEFENDANT IN THE CRIME; AND

7.) DEFENDANT DID NOT RECEIVE A FAIR TRIAL BECAUSE
THE TRIAL COURT ALLOWED THE PROSECUTOR TO
ADMIT PREJUDICIAL HEARSAY TESTIMONY AND
EVIDENCE OF UNRELATED CRIMINAL CONDUCT.

Before discussing the reasons why this Court determined that none of these issues entitled defendant to PCRA relief, the Court will set forth the legal standards applicable to PCRA petitions and claims alleging ineffective assistance of counsel. In reviewing the propriety of a PCRA court's dismissal of a petition without a hearing, the reviewing court is limited to determining whether the court's findings are supported by the record and whether the order in question is free of legal error. Commonwealth v. Holmes, 905 A.2d 707, 509 (Pa. Super. 2006) citing Commonwealth v. Halley, 870 A.2d 795, 799 (Pa. 2005). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. Commonwealth v. Carr, 768 A.2d 1164, 1166 (Pa. Super. 2001). A PCRA court may decline to hold a hearing on the petition if the petitioner's claims are patently frivolous and is without a trace of support either in the record or from other evidence. Commonwealth v. Jordan, 772 A.2d 1011, 1014 (Pa. Super. 2001). The reviewing court on appeal must examine each of the issues raised in the PCRA petition in light of the record in order to determine whether the PCRA court erred in concluding that there were no genuine issues of material fact and denying relief without

an evidentiary hearing. Id. See also Commonwealth v. Hardcastle, 701 A.2d 541, 542 (Pa. 1997).

Pennsylvania law presumes counsel is effective and therefore, the burden is placed upon the defendant to prove otherwise. Commonwealth v. Brown, 767 A.2d 576, 581 (Pa. Super. 2001), citing Commonwealth v. Carpenter, 725 A.2d 154, 161 (Pa. 1999), citing Commonwealth v. Marshall, 633 A.2d 1100 (Pa. 1993); see also Commonwealth v. Baker, 614 A.2d 663, 673 (Pa. 1992). Trial counsel has broad discretion in matters of trial strategy and the determination of what tactics to employ during litigation. Commonwealth v. Choi Chun Lam, 684 A.2d 153, 160 (Pa. Super. 1996). Furthermore, "[i]t is well established that failed trial tactics of defense counsel are not grounds for a new trial." Commonwealth v. Hall, 565 A.2d 144, 148 (Pa. 1989). Trial counsel will not be held ineffective if there was a reasonable strategic basis for his or her trial tactics. Commonwealth v. Pursell, 724 A.2d 293, 311 (Pa. 1999).

In order to establish that trial counsel's representation was deficient, defendant must establish all of the following three elements, as set forth in Commonwealth v. Pierce, 527, A.2d 973, 975-76 (Pa. 1987): (1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for his or her action or inaction; and (3) the petitioner suffered prejudice because of counsel's ineffectiveness. Commonwealth v. Chmiel, 30 A.3d 1111, 1127 (Pa. 2011), citing Commonwealth v. Dennis, 950 A.2d 945, 954 (Pa. 2008).

The threshold question in reviewing an ineffectiveness claim is whether the issue, argument, or tactic which trial counsel failed to use at trial and which is the basis of the ineffectiveness claim is of arguable merit. Commonwealth v. Balodis, 747 A.2d 341, 343 (Pa. 2000). If defendant can prove that the argument or tactic which trial counsel failed to use at trial is of arguable merit, then the "reasonable basis" test is applied to determine if the course of

action chosen by trial counsel was designed to effectuate his or her client's interest. Id. With regard to the second element, defendant must prove that "an alternative [action or inaction] not chosen offered a potential for success substantially greater than the course actually pursued." Chmiel, supra, citing Commonwealth v. Williams, 899 A.2d 1060, 1064 (Pa. 2006) (alteration added). To establish prejudice, defendant must demonstrate that there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. Chmiel, supra, at 1127-28, citing Dennis, supra, at 954.

Further, "[i]f it is clear that if a defendant has not demonstrated that counsel's act or omission adversely affected the outcome of the proceedings, the claim may be dismissed on that basis alone and the court need not first determine whether the first and second prongs have been met." Commonwealth v. Rios, 920 A.2d 790, 799 (Pa. 2007), citing Commonwealth v. Albrecht, 720 A.2d 693, 701 (Pa. 1998). A PCRA proceeding requires a defendant to establish that counsel's ineffectiveness "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." Rios, supra, citing Pierce, supra, at 221–22; Commonwealth v. Kimball, 724 A.2d 326, 333 (Pa. 1999).

An application of the foregoing to defendant's claims clearly establishes that this Court did not commit an abuse of discretion by denying defendant PCRA relief.

> 1.) THE LIFE SENTENCE IMPOSED FOR THIRD-DEGREE MURDER IS ILLEGAL BECAUSE PETITIONER WAS NOT CONVICTED OF THIRD DEGREE MURDER BUT RATHER CONSPIRACY TO COMMIT THIRD DEGREE MURDER AND PRIOR COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE THIS CLAIM.

In his first claim, defendant argues that the sentence of life imprisonment imposed upon him on the third-degree murder conviction pursuant to 42 Pa. C.S. § 9715 is illegal because he

was not previously convicted of third-degree murder or voluntary manslaughter as required by the statute. In support of this claim, he asserts that he was previously convicted of conspiracy to commit third-degree, which under the plain language of the statute cannot serve as an offense triggering the application of the statute. He also accuses prior counsel of ineffective assistance because counsel did not raise an objection to the imposition of the life sentence. Defendant's *Pro Se* PCRA Petition, p.4.

42 Pa. C.S. § 9715 states, in pertinent part, the following:

§ 9715. Life imprisonment for homicide

(a) Mandatory life imprisonment.--Notwithstanding the provisions of section 9712 (relating to sentences for offenses committed with firearms), 9713 (relating to sentences for offenses committed on public transportation) or 9714 (relating to sentences for second and subsequent offenses), any person convicted of murder of the third degree in this Commonwealth who has previously been convicted at any time of murder or voluntary manslaughter in this Commonwealth or of the same or substantially equivalent crime in any other jurisdiction shall be sentenced to life imprisonment, notwithstanding any other provision of this title or other statute to the contrary.

This Court properly determined that this claim lacks merit because a review of defendant's criminal extract revealed that he previously had been convicted of third-degree murder. It indicates that on January 11, 2012, defendant appeared before the Honorable Carolyn Engel Temin and entered a guilty plea to the charge of third-degree murder as of CP-51-CR-0012969-2010. Based on the foregoing, this Court suggests that relief be denied with respect to this claim because it is clear that the claim lacked merit and that prior counsel was not ineffective for not raising this claim previously.

2.) TRIAL COUNSEL WAS INEFFECTIVE FOR NOT
PRESENTING EVIDENCE CONCERNING PRISON
CONDITIONS AND THE SIZE OF THE VICTIM.

In this claim, defendant asserted that trial counsel was ineffective because he failed to introduce evidence concerning prison conditions, the fact that the victim was a bully who used his size and heft to manipulate and control other inmates through physical intimidation and actual physical assault. He further argues that trial counsel should have introduced evidence indicating that the victim was the first person who introduced a weapon into the affray. See Petitioner's *Pro Se* PCRA Petition, 10/3/16, pp. 5, 6; Defendant's *Pro Se* Memorandum, 1/24/17, p. 8.

This Court's review of the record belied defendant's claim that trial counsel failed to elicit evidence relating to prison conditions and the victim's violent proclivities and physical size. Counsel for defendant, along with counsel for his co-defendants, established that the CFCF is a violent place where stabbings frequently occur, that the victim was very big and tough and likely sold drugs, guards were ineffectual in stopping and preventing violence, inmates had to fend for themselves, and prison, and that the victim used violence against petitioner before petitioner and the others attacked the victim. (N.T. 2/26/13, 179, 180; 2/27/13, 99, 112, 113, 118; 2/28/13, 4). Therefore, because the evidence defendant complains was not introduced was presented to the Court, it is clear that this claim lacks merit.

The claim was also deemed lacking in merit because defendant failed to establish that the outcome of the trial would have been different had prior counsel presented additional evidence about the victim and prison conditions. This Court was well aware of the conditions existing in the CFCF at the time of the incident and that the victim used his size to intimidate other inmates. It would not have rendered a different verdict had it heard additional evidence relating to the points raised by defendant. Accordingly, it is suggested that this claim, if raised on appeal be deemed lacking in merit.

3.) TRIAL COUNSEL PROVIDED INEFFECTIVE
ASSISTANCE OFCOUNSEL BY NOT OBJECTING TO
TESTIMONY THAT   BOLSTERED THE TESTIMONY OF
RICHARD GYTON.

Petitioner contended in this claim that trial counsel provided him with ineffective assistance of counsel because he did not object when a police detective gave testimony bolstering the credibility of Richard Gyton. Defendant submits that the claim possesses merit because the law prohibits a witness from testifying about the reliability of another witness's testimony. See Defendant's *Pro Se* Memorandum, 1/24/17, pp. 5-6.

This Court correctly determined that this claim lacked merit because defendant raised a claim on direct appeal that mirrors the claim underlying his current ineffectiveness claim. Although the Superior Court ruled that the issue had been waived because a contemporaneous objection to the testimony had not been proffered at trial, the Superior Court went on and addressed the merits of the claim, which resulted in a finding that had the issue been preserved, the claim would have been found lacking in merit. See Superior Court Memorandum, 1905 EDA 2013, at pp. 2-4.  This Court adopted the rationale supplied by the Superior Court in finding that defendant's ineffectiveness claim concerning this issue lacked merit. It is suggested if defendant raises this claim on appeal, that the claim be dismissed form the same reasons expressed in the Superior Court's memorandum.

4.) TRIAL COUNSEL PROVIDED INEFFECTIVE
ASSISTANCE OF COUNSEL BY NOT
NOT CHALLENGING THE CREDIBILITY OF THE
COMMONWEALTH'S COOPERATING WITNESSES AND
FOR FAILING TO MOVE TO EXCLUDE THEIR
TESTIMONY.

Petitioner also contended that he was entitled to PCRA relief because trial counsel failed to attack the credibility of the Commonwealth's cooperating witnesses who were themselves prison inmates and for not moving to exclude their testimony because it was irreparably

unreliable because of the deals the witnesses allegedly received in agreeing to testify for the Commonwealth and because some of the witnesses had been threatened into cooperating by the authorities. See Defendant's *Pro Se* Memorandum, 1/24/17, pp. 9-10.

It is submitted that this Court did not err by denying relief with respect to this claim. The record clearly demonstrates that those witnesses who were themselves inmates and those who received consideration in exchange for their testimony were examined by counsel concerning the nature and substance of the consideration they may have received in exchange for their agreeing to testify for the Commonwealth as well as about how the police treated them when they were interviewed. While testifying, Richard Gyton was asked to testify about the medication he was taking and about whether the medication was still affecting him when he provided police with a statement. (N.T. 2/27/13, 178-179). Moreover, Gyton's medical records were introduced by way of stipulation and through those records this Court was well aware that Gyton had drugs in his system when he gave his statement. (N.T. 2/28/13, 26). Trial counsel cross-examined Gyton concerning the deal he made with the Commonwealth and elicited the nature of the benefits he received for cooperating with the Commonwealth. (N.T. 2/27/13, 180-181). Accordingly, counsel avers that he cannot raise a claim with respect to this issue. Therefore, because this Court was well aware through the actions of trial counsel that the testimony of the cooperating witnesses may have been compromised by their drug use and the deals they made it is clear that this claim was properly deemed to lack merit. It is further noted that had additional evidence related thereto been introduced, this Court would not have rendered a different verdict. Accordingly, if defendant should raise this claim on appeal, it is suggested that the Court find that this Court did not commit an abuse of discretion by ruling that it lacked merit.

5.) TRIAL COUNSEL PROVIDED INEFFECTIVE
ASSISTANCE OF COUNSEL BY NOT ARGUING THAT
THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN THE
CONSPIRACY CHARGE.

Defendant also accused prior counsel of providing ineffective assistance of counsel because counsel failed to raise a claim on appeal challenging the sufficiency of the evidence with regard to the charge of criminal conspiracy. The claim was rejected by this Court because defendant failed to establish that if had arguable merit.

The Pennsylvania Supreme Court has provided the following standard of review for sufficiency of the evidence claims:

> [T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction... does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, it must determine simply whether the evidence believed by the fact-finder was sufficient to support the verdict... [A]ll of the evidence and any inferences drawn therefrom must be viewed in the light most favorable to the Commonwealth as the verdict winner.

Commonwealth v. Ratsamy, 934 A.2d 1233, 1235-1236 (Pa. 2007) (emphasis in original).

The Commonwealth need not establish guilt to a mathematical certainty, and it may sustain its burden by means of wholly circumstantial evidence. Commonwealth v. Duncan, 932 A.2d 226, 231 (Pa. Super. 2007) (citation omitted). A reviewing court may not substitute its judgment for that of the fact finder, and where the record contains support for the convictions, they may not be disturbed. Id. Lastly, the finder of fact is free to believe some, all, or none of the evidence presented. Commonwealth v. Hartle, 894 A.2d 800, 804 (Pa. Super. 2006).

With regard to the crime of Criminal Conspiracy a person is guilty of criminal conspiracy if he forms an agreement with another to commit a crime with shared criminal intent and one of the co-conspirators commits an overt act in furtherance of the conspiracy. 18 Pa. C.S. § 903;

Commonwealth v. Hennigan, 753 A.2d 245, 253 (Pa. Super. 2000). Proof of a formal or explicit agreement, which is rarely available, is unnecessary. Commonwealth v. Grekis, 601 A.2d 1275, 1283 (Pa. Super. 1991). Rather, the existence of a common agreement and shared intent is almost always inferred from circumstantial evidence. Hennigan, 753 A.2d at 253. Thus, a conspiracy may be proven inferentially by relevant circumstances, including the following: "(1) an association between alleged conspirators; (2) knowledge of the commission of the crime; (3) presence at the scene of the crime; and (4) in some situations, participation in the object of the conspiracy." Commonwealth v. McKeever, 689 A.2d 272, 274 (Pa. Super. 1997). These factors may coalesce to establish a conspiratorial agreement beyond a reasonable doubt where one factor alone might fail. Commonwealth v. Garcia, 847 A.2d 67, 71 (Pa. Super. 2004); Commonwealth v. French, 578 A.2d 1292, 1294 (Pa. Super. 1990). Finally, it is hornbook law that a member of a conspiracy is responsible for all of the criminal acts of his co-conspirators that are committed in furtherance of the conspiracy. Commonwealth v. Roux, 350 A.2d 867, 871 (Pa. 1976).

Here, the evidence was more than sufficient to demonstrate that defendant formed a corrupt confederation with the others who participated in the murder of the victim. The evidence shows that prior to the incident defendant and the others came together in what can be described as a huddle and upon separating they attacked the victims and began stabbing them in unison. N.T. 2/27/13, 64-81. Such evidence was sufficient to make out the crime of criminal conspiracy and thus, this Court did not err by denying defendant relief with respect to this claim. See Commonwealth v. Poland, 26 A.3d 633, 518, 523 (Pa. Super. 2011) ("the actors' relationships and their conduct before, during and after the criminal episode established a unity of criminal purpose sufficient for the jury to find conspiracy beyond a reasonable doubt."). Accordingly, if

defendant raises this claim on appeal, it is suggested that relief be denied thereto for the reasons stated herein.

> 6.) A NEW TRIAL SHOULD BE GRANTED BECAUSE RICHARD GYTON AUTHORED A LETTER WHEREIN HE STATES THAT THE POLICE AND THE PROSECUTION FORCED HIM TO IMPLICATE DEFENDANT IN THE CRIME.

Defendant contended in this claim that he was entitled to PCRA relief based on a letter authored by Gyton wherein he alleges that he had been forced by authorities to implicate defendant in the crime. Relief was denied on this claim because defendant failed to establish that Gyton's testimony would have changed the outcome of the trial given that Gyton denied having seen defendant or the other perpetrators attack the victim, thereby refuting what was contained in his statement to police. Defendant's co-defendant raised this after-discovered evidence claim on appeal. The Superior Court found the claim lacked merit for the following reasons:

> In the instant case, Appellant's after-discovered evidence claim is merely cumulative of the testimony Gyton and Rivers gave at trial. As astutely noted by the trial court, Gyton and Rivers had already effectively recanted their prior statements, so that their purportedly newly discovered testimony does not conflict with the testimony the witnesses offered at trial. Although both witnesses initially indicated to detectives that they observed Appellant stab Bostic, they refused to cooperate at trial and identify Appellant as the attacker. See N.T., 2/27/130 at 144; N.T., 2/28/13 at 41. Thus, as Gyton and Rivers never implicated Appellant in the prison attack at trial, the supposed recantation affidavits do not satisfy the requirement that the evidence would likely result in a different verdict if a new trial were granted. Accordingly, Appellant's after-discovered evidence claim fails.

Commonwealth v. Donte Jones, 1879 EDA 2013 (Super. Ct. 4/6/15).

In view of the foregoing, the denial of relief with respect to this claim was proper. Therefore, it is suggested that if defendant raises this issue on appeal, that the claim be deemed lacking in merit.

### 7.) DEFENDANT DID NOT RECEIVE A FAIR TRIAL BECAUSE THE TRIAL COURT ALLOWED THE PROSECUTOR TO ADMIT PREJUDICIAL HEARSAY TESTIMONY AND EVIDENCE OF UNRELATED CRIMINAL CONDUCT.

Finally, defendant alleged that he was entitled to a new trial because this Court allowed the Commonwealth to present inadmissible hearsay testimony, inadmissible unrelated criminal conduct evidence, and evidence alleging intimidation of witnesses. According to defendant, this Court permitted Corrections Officer Eric Patterson to present hearsay when he testified that "Sarge" told him that victims were taken from three different cells. (N.T. 2/26/13, 27).[2] He also contends that Omar Fulton also provided hearsay testimony three times and that George Moore did as well with the blessing of this Court. (N.T. 2/27/13, 45, 144; 2/28/13, 63, 66, 67).[3,4] Finally he claims that hearsay testimony was presented by a Detective Burke.

In addition thereto, defendant argues that this Court permitted the Commonwealth to introduce evidence of unrelated criminal conduct that involved drug smuggling and drug dealing in the prison,[5] evidence of threats made in a letter to Omar Fulton,[6] and testimony from George Moore that defendant had been in a fight.[7]

This Court denied relief with respect to these claims because they had been waived. Each of these claims could have been raised at trial and/or on direct appeal. According to the PCRA claims are deemed waived if they could have been raised previously. 42 Pa.C.S. §§ 9544 (b).

---

[2] See Petitioner's *Pro Se* Memorandum, 1/24/17, p. 8.
[3] See Petitioner's Memorandum, 1/24/17, p. 8.
[4] See Petitioner's *Pro Se* PCRA Petition, 10/3/16, p. 5.
[5] See Petitioner's *Pro Se* PCRA Petition, 10/3/16, pp. 5, 6; Petitioner's Memorandum, 1/24/17, p. 8.
[6] See Petitioner's *Pro Se* PCRA Petition, 10/3/16, p. 6.
[7] See Petitioner's *Pro Se* PCRA Petition, 10/3/16, p. 5.

Moreover, had defendant accused prior counsel of providing ineffective assistance of counsel for not raising/preserving these claims his ineffectiveness claims would have been rejected because no error occurred in allowing the admission of the complained of evidence and/or defendant could not establish that the admission of the evidence prejudiced him.

For example, with regard to the complaint that Officer Patterson was permitted to testify to hearsay, the alleged hearsay was elicited by Donte Jones' attorney to impeach his credibility. Counsel was merely attempting to show that Patterson did not see what he testified to in order to undermine his credibility. A review of the record shows that the hearsay testimony petitioner complains of was elicited by Donte Jones' attorney during his cross-examination of the corrections officer in relation to a statement Patterson gave after the incident:

> "They took Bostic out. And then we did a search and found three other victims. Two victims were in No. 15, and the other in 20, or 21. They were taken to medical right away."

(N.T. 2/26/13, 27). Following this testimony counsel elicited from Patterson that he had not actually observed what he told police, thereby undermining his credibility. As such because the testimony was not introduced for the truth of the matter but to impeach Patterson's credibility, the testimony was not hearsay.

In addition, not only could defendant not establish that the claim had merit, he also is unable to establish that Patterson's testimony, even if it were inadmissible hearsay, prejudiced him such that its introduction deprived him of a fair trial. This is so because other witnesses testified about where the victims were found and also because this Court did not consider the testimony for the truth of the matter asserted but rather for its impeachment value.

With regard to Omar Fulton defendant cites to three instances where he claims Fulton was permitted to present hearsay testimony. (N.T. 2/27/13, 45, 143-144; 2/28/13, 63, 66, 67).[8] A review of the record belied defendant's claim that Fulton was permitted to present hearsay testimony and a claim that trial counsel was ineffective for failing to object

First, a review of the testimony found at N.T. 2/27/13, 45, indicates that Fulton was testifying about what defendant had said. It was not hearsay because it was a statement of a party opponent and thus counsel cannot be found ineffective with respect thereto. Defendant's next reference to the record, N.T. 2/27/13, 143-144, concerned a question asked of Gyton and not Fuller, inquiring about how Gyton learned that the victim had died and how it made him feel. Although Gyton testified that a sergeant had told him, defendant did not suffer prejudice because other properly admitted evidence was presented indicating that the victim was dead and the testimony did not implicate defendant in the incident herein.

With regard to Detective Burke defendant complained that this Court permitted the detective to testify that Gyton indicated that he and the defendants were housed together in the CFCF. (N.T. 2/28/13, 63, 66, 67). This Court determined that the claim lacked merit because the testimony was not admitted for the truth of the matter asserted but rather to show why Gyton recanted and did not testify in conformity with what he stated to police when he was interviewed. As such, defendant's hearsay claim failed as would any ineffectiveness claim. Moreover, defendant cannot establish prejudice because this Court did not consider the testimony for the truth of the matter asserted. Therefore, had defendant accused counsel of ineffective assistance for not lodging an objection, the claim would have been rejected.

With respect to George Moore and the claim that counsel ineffectively permitted him to present inadmissible testimony, the record indicates that defendant is mistaken that Moore's

---

[8] See Petitioner's Memorandum, 1/24/17, p. 8.

testimony was hearsay. Rather, the complained of testimony concerned Moore's opinion regarding whether he and the defendants were at odds with one another. (N.T. 2/26/13, 96). Therefore, defendant cannot not prove that the claim possessed arguable merit.

In addition, defendant also cannot not prove that the admission of the testimony, even if hearsay, prejudiced him. The evidence of defendant's guilt was overwhelming and a successful objection would not have resulted in a different verdict.

Regarding the introduction of the evidence indicating there was drug smuggling dealing taking place in the prison[9] and that relating to the receipt of threatening letters by Omar Fulton, counsel was not ineffective for failing to object. The evidence related to drugs was admissible to establish a motive for the killing in that it showed that the victim controlled jobs and thus, was able to facilitate the smuggling of drugs into the prison. (N.T. 2/26/13, 105-107). Evidence of motive is clearly admissible. See Pa.R.E. 404(b)(2).

It is further noted that counsel's failure to object to the drug evidence did not prejudice defendant. No evidence was admitted connecting defendant to the drug dealing and this Court did not attribute any of those allegations to defendant.

A complaint concerning counsel's failure to object to the threatening letters also would not have been found to possess arguable merit because objections thereto were sustained. (N.T. 2/27/13, 87-89). Thus, defendant was not provided with ineffective assistance of counsel.

Finally, if defendant had alleged that trial counsel was ineffective for failing to object to Moore's testimony that defendant had a fight with a friend of Moore's relief would have been denied him given that trial counsel did object and the objection was overruled. (N.T. 2/26/13, 96).

---

[9] See Petitioner's *Pro Se* PCRA Petition, 10/3/16, pp. 5, 6; Petitioner's Memorandum, 1/24/17, p. 8.

Relatedly, had defendant asserted that appellate counsel was ineffective for not raising on appeal a claim that this Court abused its discretion by overruling the objection, defendant would have been denied relief with respect to that claim as well. The claim would have been deemed to lack merit because this Court did not err by overruling the objection. The evidence was relevant to flesh out and explain the nature of the relationship Moore had with the defendants. This Court considered it solely for that purpose and not as evidence indicating that defendant was a violent person. Consequently, defendant would not have been granted relief on this claim as a result of ineffective assistance of counsel.

CONCLUSION

For the foregoing reasons, the order denying defendant PCRA relief should be affirmed.

By the Court,

Date: 9/19/17

Honorable Jeffrey P. Minehart

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA :  NO. CP-51-CR-0014636-2011

VS.

SEAN SULLIVAN



CP-51-CR-0014636-2011 Comm. v. Sullivan, Sean
Opinion

8005144421

OPINION

FILED

SEP 2 0 2017

Office of Judicial Records
Appeals/Post Trial

## PROCEDURAL HISTORY

Defendant, Sean Sullivan, was charged as of the above Bill and Term No. with, *inter alia*, one count of Murder, generally, one count of Conspiracy to Commit Murder, four counts of Attempted Murder, four counts of Aggravated Assault, one count of Possession of an Instrument of Crime and one count of Possession of an Offensive Weapon. These charges arose from an incident that occurred at Curran Fromhold Correctional Facility (CFCF) during which defendant, an inmate at the facility, along with four co-conspirators Rashawn Edwards, Haleem Poole, Jalik Peay and Donte Jones, engaged in an attack on five other inmates. During the incident, Earl Bostic, an inmate at CFCF, was fatally injured.

Defendant was tried in February and March of 2013, before this Court, sitting without a jury. At the conclusion of the trial, this Court found defendant guilty of Third-Degree Murder, Possession of an Instrument of Crime, Possession of an Offensive Weapon, Conspiracy to Commit Murder and one count of Aggravated Assault. This Court found defendant not guilty of four counts of Attempted Murder and three counts of Aggravated Assault.